UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| RALPH THOMAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 2:11-cv-00187-JMS-WGH |
| | ) |
| W. WILSON, CLINICAL DIRECTOR, | ) |
| | ) |
| Defendant. | ) |

**Entry Granting Defendant's Motion for Summary Judgment
And Directing Entry of Final Judgment**

Plaintiff Ralph Thomas is a federal inmate currently serving a 65 year sentence at the United States Penitentiary in Terre Haute, Indiana ("USP-Terre Haute"). The lengthy procedural history associated with this case is summarized in Filing No. 96, at ECF pp. 1-4. The only claim remaining in this action is a claim for equitable relief against the defendant in his official capacity. Filing No. 96, at ECF pp. 5-6. Specifically, Thomas's amended complaint asserts that he is entitled to injunctive relief to treat his severe muscle cramps.[1] Filing No. 51, at ECF p. 3. Thomas states that the cause of his cramping is unknown and that medical staff continue to refuse to treat this symptom and deny that it is a problem. Filing No. 141, at ECF p. 2.

---

[1] In making allegations that he is not receiving treatment for muscle cramps, he makes no allegations of wrongdoing by defendant Dr. Wilson. In addition, Thomas's response in opposition to the motion for summary judgment states that he seeks an order consistent with the following: 1) directing staff to inform health services of medical problems, 2) directing staff to evaluate plaintiff for pain and suffering when informed, 3) stopping staff from making false statements on government documents, 4) releasing him from prison; and 5) directing an independent organization to examination of his medical records to determine the quality of health care he has been provided. Filing No. 139, at ECF p. 21. These requests for relief do not relate directly to treatment of muscle cramps and therefore are beyond the scope of this action. Thomas was previously invited to file a new civil action regarding claims outside of this civil action and was provided a prisoner *pro se* civil rights complaint form to do so. See Filing No. 128; *See also Thomas v. Medtronic, Inc.*, 2:14-cv-51-JMS-WGH (product liability case related to pacemaker removed from state court on February 28, 2014).

Defendant William E. Wilson, M.D., in his official capacity only, (hereafter "Dr. Wilson"), seeks resolution of this action through summary judgment. For the reasons explained below, Thomas is not entitled to injunctive relief and Dr. Wilson is entitled to judgment as a matter of law.

## STANDARD OF REVIEW

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. Pro. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. Pro. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. Pro. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment. Fed. R. Civ. Pro. 56(e).

The Court need only consider the cited materials, Fed. R. Civ. Pro. 56(c)(3), and the

Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson v. Cambridge Indus.,* 325 F.3d 892, 898 (7th Cir. 2003). Furthermore, reliance on the pleadings or conclusory statements backed by inadmissible evidence is insufficient to create an issue of material fact on summary judgment. *Id.* at 901.

The key inquiry, then, is whether admissible evidence exists to support a plaintiff's claims, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections,* 175 F.3d 497, 504 (7th Cir.1999). When evaluating this inquiry, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial . . . against the moving party." *Celotex,* 477 U.S. at 330.

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Applying the standards set forth above the following material facts are not in dispute:

1. Plaintiff Ralph Thomas is an 80-year-old male inmate with a significant past medical history with multiple comorbidities including coronary artery and vascular disease, renal artery stenosis, gout, renal insufficiency, diabetes, glaucoma, hypertension and reflux, all of which have required treatment with prescribed medications.[2] [Filing No. 129-1, at ECF pp. 2-13](), especially p. 3.

2. Dr. Wilson and Dr. Harvey testified that the care administered to Thomas was administered consistent with Bureau of Prisons policies and procedures, and community

---

[2] Thomas states (without citation to admissible evidence) that he also has heart failure, a pacemaker, and lower back problems.

standards of care.³ Filing No. 129-1, at ECF p. 3; Filing No. 129-1, at ECF p. 13; and Filing No. 129-20, at ECF pp. 4-5.

3. The medical records document that Thomas has been provided with regular and continual medical care consistent with his complaints and conditions throughout his incarceration at USP-Terre Haute, including at least twenty-four (24) full medical work-ups in the Chronic Care Clinics.⁴ Filing No. 129-1, at ECF p. 5. Thomas has been seen by medical care providers almost once per week, sometimes more frequently, for his medical complaints, and has had emergency services available 24 hours per day, as well as the ability to sign up for sick call.⁵ Filing No. 129-1, at ECF p. 13.

4. The medical staff has long attempted to isolate reasons for Thomas's subjective complaints of body and leg cramps. Filing No. 129-1, at ECF p. 3. The exact etiology of the body aches and muscle cramps has never been determined. Filing No. 129-1, at ECF p. 5; and Filing No. 129-21, at ECF p. 6. Numerous evaluations by rheumatologists have not definitively

---

³ Thomas disputes that he was administered medical care equal to community standards. In support he references 1156 pages of his medical records. Filing No. 129-2, at ECF pp. 1 through Filing No. 129-19 at ECF pp. 1156. This general reference to medical records is insufficient to create a factual dispute. See Fed. R. Civ. P. 56(c)(1) (stating that a factual assertion must be supported by citations to particular parts of materials in the record); Local Rule 56-1(e) (providing that citations must refer to a page or paragraph number or otherwise specify where the relevant information can be found). Thomas also states that medical staff failed to follow recommendations and medication requests of outside consultants. In support of this statement Thomas references Filing No. 139-3 at ECF pp. 84-58 and Filing No. 139-3 at ECF pp. 91-92 (marked as plaintiff's pp. 095, 096, 102, and 103). These documents do not support the fact asserted. Pages 84 and 85 are a grievance and response regarding the availability of program statements. Pages 91 and 92 appear to be an unauthenticated portion of a program statement.
⁴ Thomas again states that his medical records document that he has not been provided with care consistent with his complaints. In support he references 1156 pages of his medical records. Filing No. 139 at p. 4. This general reference (without more) is insufficient to create a material fact in dispute. See Fed. R. Civ. P. 56(c)(1); Local Rule 56-1(e).
⁵ Thomas states that between July 15, 2013, through February 15, 2014, he "signed up for sick call untold times, but [health services] records show only 7 times that I was seen, and only two of these were for a [Physician Assistant.]" Filing No. 139 at p. 5. In addition, Thomas states that sick call is only 4 days a week. Thomas does not dispute that he has been seen by medical care providers almost once per week, sometimes more frequently, for his medical complaints.

revealed any specific cause of Thomas's body aches outside of conclusions that they result from the normal aging process.  Filing No. 129-1, at ECF p. 13.

5. Thomas has osteoarthritis, which is consistent with someone of his age and the consulting Rheumatologist concurs with the current diagnosis of osteoarthritis and the treatment plan.  Filing No. 129-1, at ECF p. 7; and Filing No. 129-14, at ECF pp. 34-36.

6. In addition to the medicinal treatments Thomas has received, he has also been provided with a medical soft shoe, compression stockings, a wheelchair (when necessary),[6] and physical therapy in an effort to reduce his pain and cramping. Filing No. 129-16, at ECF pp. 42-44; Filing No. 129-19, at ECF pp. 32-33; and Filing No. 129-16, at ECF pp. 18-20.

7. Thomas is currently receiving the following medications:

   a. Colchicine Tablet 0.6 mg.  This medication is prescribed for gout flares.  It is for the prophylaxis and treatment of acute gout flares when taken at the first sign of a flare. This medication must be used sparingly by Thomas due to his history of significant kidney problems and renal failure. Colchicine can increase the damage to kidneys and risk of significant damage. As of now, Thomas only receives it with an acute gout flare and then for only one day.[7]

   b. Febuxostat Oral Tablet 80 mg.  Febuxostat is prescribed for the chronic treatment of gouty arthropathy without tophus. This is the appropriate medication for Thomas to receive to assist in reducing the likelihood of gout flares.

   c. NPH insulin. Thomas has type II (adult-onset) diabetes mellitus.

---

[6] Thomas states that he was not furnished a wheelchair on May 28, 2013, when he was returned to the prison from Union Hospital where he had surgery to implant a heart pacemaker and treatment for an acute gout attack. Thomas was not provided with a wheelchair from the van after arrival at the USP Terre Haute into the facility. After Thomas made it to the lobby door two correctional officers saw Thomas's condition and assisted him to Health Services.

[7] Thomas states without citation to admissible evidence that his Colchicine was discontinued.

d. Baclofen 10 mg. This is prescribed for treatment of muscle spasms.[8]

e. Terazosin Capsule 2 mg. This medication is prescribed for benign hypertophy of Prostate (BPH).[9]

f. glyBuride 2.5 mg. This medication is prescribed for treatment of Thomas's type II (adult-onset) diabetes mellitus.

g. Pyridoxine HCl 25 mg. This medication is prescribed to treat Thomas's chronic kidney disease, Stage IV (severe).

h. Nitroglycerin SL 0.4 mg. This is prescribed to Thomas for the treatment of his angina as a result of his coronary artery disease, occlusion and stenosis of carotid artery.

i. Potassium Chloride 20 m Eq. This is prescribed to Thomas for the treatment of hypokalemia which contribute to his renal insufficiency.

j. Magnesium Oxide 400 mg. This is also prescribed to treat Thomas's coronary artery disease and occlusion and stenosis of carotid artery.

k. Metoprolol 50 mg. This is prescribed for treatment of Thomas's hypertension.

l. Furosemide 20 mg. This is prescribed to Thomas as a diuretic.[10]

m. Losartan potassium 50 mg. This is prescribed to reduce Thomas's blood pressure.

n. Ergocalciferol 1.25 mg. This is prescribed to address Thomas's vitamin D deficiency.

o. Latanoprost ophthalmologic solution. This is prescribed for treatment of Thomas's glaucoma.

---

[8] Thomas states without citation to admissible evidence that this medication was discontinued.
[9] Thomas states without citation to admissible evidence that this medication was discontinued.
[10] Thomas states that he takes 3 x 20 mg per day, not 20 mg per day.

    p. Acetaminophen 325 mg. This is prescribed for Thomas's general pain, including general joint pain.

    q. Aspirin 81 MG. This is prescribed as a cardio-protective antiplatelet.

*See* [Filing No. 129-2, at ECF p. 7](#) (compiling list of Thomas's medications as of January 7, 2014), and [Filing No. 129-21, at ECF p. 3](#).

    8. Thomas has repeatedly and consistently indicated the he wants Colchicine as treatment for his chronic gout. [Filing No. 129-1, at ECF p. 8](#); and [Filing No. 129-1, at ECF, p. 10](#). Thomas believes that this is the only drug that relieves his gout pain. [Filing No. 139 at ECF pp. 10](#). In support, Thomas notes that Dr. Stander on June 11, 2013, stated in a medical record: "May need to use colchicine in spite of its contraindication in renal insufficiency because of the severity of his leg and foot pain. The colchicine is the only thing that helps." [Filing No. 129-4 at ECF p. 7](#) (plaintiff's page 188).

    9. The medical providers, including outside consultants, and the local contract hospital, have stopped or restricted the use of Colchicine because of contraindications, including Thomas' age and loss of kidney functions. [Filing No. 129-1, at ECF pp. 8-10](#); [Filing No. 129-1, at ECF p. 12](#); [Filing No. 129-2, at ECF p. 81](#); [Filing No. 129-2, at ECF pp. 84-85](#); [Filing No. 129-3, at ECF p. 1](#); [Filing No. 129-3, at ECF p. 87](#); [Filing No. 129-20, at ECF p. 3](#); and [Filing No. 129-21, at ECF p. 5](#).

    10. Thomas's elevated Creatinine levels indicate that he still has a significant loss in kidney function and regular continued use of Colchicine is not recommended. [Filing No. 129-1, at ECF pp. 12-13](#); [Filing No. 129-20, at ECF p. 3](#); and [Filing No. 129-21, at ECF p. 5](#). In addition, the use of Colchicine is cautioned in geriatric patients, *see* [Filing No. 129-21, at ECF p. 10](#) (Warnings and Precautions), [Filing No. 129-21, at ECF p. 13](#) (Use in Specific Populations),

7

Filing No. 129-21, at ECF p. 14 (Dosage and Administration), Filing No. 129-21, at ECF p. 20 (Geriatric use); in patients with renal insufficiency, *see* Filing No. 129-21, at ECF p. 10, (Warnings and Precautions), Filing No. 129-21, at ECF p. 13 (Use in Specific Populations), 129-21, at ECF p. 14 (Dosage and Administration), Filing No. 129-21, at ECF p. 20 (Renal Impairment); and in patients with muscle pains, *see* Filing No. 129-21, at ECF p. 28 (Neuromuscular Toxicity).

11. Thomas' kidney function has improved over time, which has allowed the continued, albeit limited use of Colchicine for acute gout flair-ups.[11] Filing No. 129-1, at ECF p. 12; and Filing No. 129-21, at ECF p. 5.

12. When Colchicine was stopped or reduced, Thomas was still receiving alternative treatment for his gout with the use of Febuxostat.[12] Filing No. 129-1, at ECF p. 9; Filing No. 129-1, at ECF p. 12; Filing No. 129-20, at ECF p. 4; Filing No. 129-21, at ECF p. 3; Filing No. 129-21, at ECF p. 5; and Filing No. 129-21, at ECF pp. 30.

13. Thomas has received, and continues to receive, medication regularly for his pain complaints. Filing No. 129-20, at ECF p. 4; Filing No. 129-21, at ECF p. 4. He was offered narcotic pain relief at various times but voluntarily declined to take those medications. Filing No. 129-20, at ECF p. 4; Filing No. 129-21, at ECF p. 6.

## **DISCUSSION**

As explained in the Entry of June 17, 2013, the remaining claim for equitable relief is based on the premise that this Court has the power to enjoin an unconstitutional practice of

---

[11] Thomas disputes without citation to admissible evidence that his kidney function has improved over time.

[12] Thomas disputes that Febuxostat is a treatment for an acute gout attack. However, the defendant does not claim that Febuxostat is being used for this purpose. Instead the record reflects that Febuxostat is utilized as a drug to mitigate the onset of gout by controlling the patient's uric acid production. Filing No. 129-1, at ECF p. 12

unlawful deprivation of constitutional rights. See Filing No. 96 at ECF pp. 6-9 (*citing Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 400 (1971) (J. Harlan, concurring); and *Vance v. Rumsfield*, 701 F.3ed 193, 228-229 (7th Cir. 2012)). This is not a *Bivens* action. Thus, for Thomas to be entitled to any relief he must demonstrate an on-going violation of his constitutional rights. The defendant argues that he is entitled to summary judgment because there is no evidence of any illegal or unconstitutional conduct involved in the provision of medical care to Thomas at USP-Terre Haute. Without the essential "illegal conduct" or unconstitutional conduct there can be no basis to invoke the extraordinary injunctive relief requested from this Court.

### A. Eighth Amendment

The constitutional provision pertinent to Thomas's claim is the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."). Specifically, the Eighth Amendment imposes a duty on prison officials to provide medical care to inmates. *Vance v. Peters,* 97 F.3d 987, 991 (7th Cir. 1996), *cert. denied,* 520 U.S. 1230 (1997). An Eighth Amendment violation, however, is not coterminous with a medical malpractice claim. *Forbes v. Edgar,* 112 F.3d 262, 267 (7th Cir. 1997) ("[a plaintiff] is not entitled to demand specific care. [He] is not entitled to the best possible care. [He] is entitled to reasonable measures to meet a substantial risk of serious harm to [him]."). "Medical decisions that may be characterized as 'classic examples of matters for medical judgment,' such as whether one course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview." *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) (citing *Estelle v. Gamble*, 429 U.S.

97, 107 (1976)). In addition, a disagreement with the course or manner of treatment does not, however, state an Eighth Amendment claim. *Forbes*, 112 F.3d at 266; *Snipes,* 95 F.3d at 591. In considering whether medical treatment provided to a prisoner passes constitutional muster, the Court "'must examine the totality of an inmate's medical care. . . .'" *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 591 (7th Cir. 1999) (*quoting Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1997)).

### B.  Medical Care Provided to Thomas

Thomas argues that he is entitled to injunctive relief because his serious medical needs have been ignored and that health service staff and doctors have failed to prescribe unidentified recommended medication. [Filing No. 139, at ECF p. 20](). The defendant argues that the evidence, including Thomas's medical records, establishes that he was and is receiving care at USP-Terre Haute for his medical conditions and complaints and that there is no evidence before this Court that anyone at USP-Terre Haute has violated Thomas's Eighth Amendment rights or any statute such that Thomas is entitled to injunctive relief.

It is undisputed that USP-Terre Haute has a comprehensive system providing for the delivery of health care to inmates. Thomas does not contend that the medical care policies in place at USP-Terre Haute are illegal or unconstitutional. To the contrary, Thomas asserts that given his advanced age and diabetic background it is important to treat him in accordance with national policies for prisoner health care. [Filing No. 139, at ECF p. 19]().

Thomas obviously disagrees with the medical judgments and decisions related to his medical care. Specifically, Thomas disagrees with the medical care provided in response to his subjective complaints of cramps in his muscles and all over his body. The medical doctors have not been able to document the cramping objectively, nor define a cause for the same. Thomas's

extensive medical records, however, establish that the doctors continually ordered additional consultations and testing in an effort to explain and identify the cause of Thomas's "pain and severe muscle cramps." Without a definitive reason established as causing the pain and muscle cramps, the course of medical treatment centered on treating the reported symptoms. Specifically, Thomas has had a full array of medication available to him for complaints of neurologic pain, joint pain, and general pains. Thomas has even been offered narcotic pain medications, which he has voluntarily refused to take. The extensive medical records establish that the medical care providers at USP-Terre Haute, in consultation with outside medical experts in numerous specialties, have attempted to diagnose and provide appropriate treatment to Thomas for his conditions and complaints, including the complaints of pain and severe muscle cramps.

Another component of Thomas's disagreement with his ongoing treatment centers on the prescription, or cessation of the prescription, of Colchicine for his gout symptoms. While Colchicine has been used over the course of Thomas's gout treatment regimen, there have been times when the medicine had to be stopped or the dosage reduced because of Thomas's renal insufficiency. The dangers of the continued use of Colchicine when the patient is suffering renal insufficiency are presented in the pharmacological literature. The decision regarding continued use and dosage of Colchicine was made by Thomas's doctors based upon their professional training and judgment, consistent with warnings and precautions of the drug manufacturer. In addition, while the Colchicine was reduced or stopped, the doctors utilized an alternative drug, Febuxostat, that is appropriate for treatment of gout, but is less toxic to the kidneys. Thus, the medical providers were not indifferent to Thomas's gout treatment—they just used an alternative drug treatment that in their medical judgment was less harmful to Thomas's other health

11

concerns.

To the extent Thomas disagrees with the manner or extent of medical care he is presently receiving, pursuant to Bureau of Prisons policy, he has adequate remedies available at law. He can sue the United States, after proper exhaustion of mandatory administrative remedies, in tort for any negligence or malpractice, *see* 28 U.S.C. 2671, *et seq.*,[13] and he may sue specific individuals, after proper exhaustion of mandatory administrative remedies, for any alleged constitutional violations related to his care and treatment, *see Bivens v.Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388 (1971).

There is simply no evidence that Dr. Wilson or the medical providers at USP-Terre Haute are involved with the ongoing violation of any law, statute, or constitutional duty. The defendant is entitled to summary judgment because there is no evidence that Thomas's Eighth Amendment rights have been violated.

## **CONCLUSION**

For all of the foregoing reasons, Thomas's claim for injunctive relief asserted against Defendant Dr. Wilson, in his official capacity, must fail, and this cause should be dismissed as a matter of law. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: _____

---

[13] If Thomas intended to assert that his medical care providers were negligent in the provision of his medical care, he should have exhausted his administrative remedies, as required by law, to assert a tort claim against the United States, and he has not done so. *See* 28 U.S.C. § 2671, *et seq.*, and Filing No. 129-22, at ECF p. 2.

Distribution:

All Electronically Registered Counsel

RALPH THOMAS
Reg. No. 18369-001
TERRE HAUTE
U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 33
TERRE HAUTE, IN 47808